## UNITED STATES v. SOUTHERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1909.)

No. 1,453.

1. PUBLIC LANDS (§ 88*)—RAILROAD GRANT—INDEMNITY LANDS—CONFLICTING GRANTS—EFFECT OF FORFEITURE.

The right given the Southern Pacific Railroad Company by Act July 27, 1866, c. 278, 14 Stat. 292, to select lieu lands within the indemnity limits for lands lost within the primary limits of the grant therein made, depends upon the status of such lands at the time of selection and not at the time of the grant, and such selections may be made of lands which were granted by the same act to the Atlantic & Pacific Railroad Company in California since the forfeiture of such grant and the restoration of the lands to the public domain by Act July 6, 1886, c. 637, 24 Stat. 123.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 267, 268; Dec. Dig. § 88.*]

2. PUBLIC LANDS (§ 88*) — RIGHTS UNDER RAILROAD LAND GRANT — EFFECT OF FORFEITURE—CONCLUSIVENESS OF DECREE.

A decree quieting the title of the United States to certain lands as against any right or claim of the Southern Pacific Railroad Company thereto was conclusive against the company as to any right it had to select such lands as lieu lands under grants then in force, whether such right had then been asserted or not, and the company could not thereafter make valid selections of any of such lands under the prior acts.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 266, 267; Dec. Dig. § 88.*]

Appeal from Circuit Court of the United States for the Southern District of California.

For opinion below, see 152 Fed. 303.

Robt. T. Devlin, U. S. Atty., and Geo. Clerk, Asst. U. S. Atty.

William Singer, Jr., and Wm. F. Herrin, for Southern Pac. R. Co. and other defendants.

Before GILBERT and MORROW, Circuit Judges, and DE HAVEN, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DE HAVEN, District Judge. This action was brought by the United States against the Southern Pacific Railroad Company and other defendants to obtain a decree quieting its title to a large body of land, described in the bill of complaint, and for an accounting. Upon the pleadings and proofs a decree was entered in the Circuit Court quieting the title of the United States to certain of the lands described in the bill, and dismissing the bill as to the remainder of the lands in controversy. Both parties have appealed to this court.

The following facts are shown by the record: The lands in controversy are within the primary limits of the grant made July 27, 1866, c. 278, 14 Stat. 292, to the Atlantic & Pacific Railroad Company, and are also within the indemnity limits of the grant made to the Southern Pacific Railroad Company by the same act. The Atlantic & Pacific Railroad Company failed to construct a road over any portion of the line definitely located by it in California, and Congress on July 6, 1886, c. 637, 24 Stat. 123, forfeited the grant made to that company, in so far as the same covered lands "adjacent to and coterminous with the uncompleted portions of the main line of its road, and embraced within the grant and indemnity limits as contemplated to be constructed under and by the provisions of the said act of July 27, 1866." After the forfeiture of the Atlantic & Pacific Railroad Company's grant, and the restoration of the lands embraced therein to the public domain, the Southern Pacific Railroad Company selected the lands in controversy as indemnity lands under the grant made to it by Act July 27, 1866, 14 Stat. 292, and the United States, prior to the commencement of this action, issued its patents to the defendant railroad company for part of the lands so selected, and that company's application to select the remainder of the lands in controversy as indemnity lands is pending in the Department of the Interior.

1. It is claimed by the United States, on its appeal, that the Southern Pacific Railroad Company could not legally select as indemnity, under its grant of July 27, 1866, lands within the place limits of the forfeited Atlantic & Pacific grant, of the same date; that, when the grant to the Atlantic & Pacific Railroad Company was forfeited, the forfeiture was for the benefit of the United States alone, and the Southern Pacific Railroad Company acquired no benefit or advantage from such forfeiture. In support of this contention the cases of the United States v. Southern Pacific Railroad Company, 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091, United States v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104, and Southern Pacific Railroad Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, are cited. We do not think these cases sustain the proposition for which the United States contends.

The first was an action by the United States to quiet its title to certain lands claimed by the Southern Pacific Railroad Company, under the grant made to it by the act of March 3, 1871, and the lands in controversy were situate within the primary limits of that grant, and of the grant made to the Atlantic & Pacific Railroad Company by the act of July 27, 1866. It was held that both of the grants were

in præsenti, and that title to the lands in controversy in that case passed to the Atlantic & Pacific Railroad Company under its senior grant, and that when such grant was forfeited the title to the lands within its primary limits did not vest in the Southern Pacific Railroad Company under its grant of March 3, 1871.

In the case of United States v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104, the lands in suit were within the granted limits of the Southern Pacific Railroad Company under its grant of March 3, 1871, and within the indemnity limits of the prior grant made to the Atlantic & Pacific Railroad Company, and it was held by the court, as stated in the syllabus of its opinion:

"The proviso in the act of March 3, 1871, 16 Stat. 573, c. 122, granting lands in aid of the construction of the Southern Pacific Railroad company, that the grant should 'in no way affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company,' operated to exempt the indemnity lands of the Atlantic & Pacific Railroad Company from the grant to the Southern Pacific Company."

So, also, in the case of Southern Pacific Railroad Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, the Southern Pacific Railroad Company claimed title to the land there in controversy under its grant of March 3, 1871, and the question whether that company had the right to make indemnity selections under its grant of July 27, 1866, of lands lying within the granted limits of the forfeited grant to the Atlantic & Pacific Railroad Company, was not discussed by the court.

The question to be here decided does not arise under the act of March 3, 1871, but relates to the right of the Southern Pacific Railroad Company to select the land in controversy as indemnity lands under Act July 27, 1866, 14 Stat. 292. By that act there was granted to that company:

"Every alternate section of public land, not mineral, designated by odd numbers, to the amount of * * * ten alternate sections of land per mile on each side of said railroad line wherever it passed through any state, and whenever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is designated by a plat thereof, filed in the office of the Commissioner of the General Land Office; * * *, and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including the reserved numbers."

We think under this statute the defendant railroad company was granted the right to select, as indemnity, for lands lost within the primary limits, any alternate sections of land within the indemnity limits of the grant, nonmineral in character, and not granted, sold, reserved, or otherwise appropriated at the date of the selection. In other words, the right of the defendant railroad company to make selections of indemnity lands under its grant depends upon the status of the lands at the date of selection, and not upon their status at the date of the act making the grant. This conclusion is supported by

the cases of Ryan v. Railroad Co., 99 U. S. 382, 25 L. Ed. 305; United States v. Central Pac. Railroad Co. (C. C.) 26 Fed. 479.

There is nothing in the act above quoted which indicates any intention upon the part of Congress to exclude from selection as indemnity lands any land which at the date of selection was nonmineral public land, and not otherwise appropriated or disposed of.

In Barney v. Winona & St. Peter Railroad Co., 117 U. S. 228, 6 Sup. Ct. 654, 29 L. Ed. 858, the Supreme Court, in construing a grant similar to that contained in the act of July 27, 1866, said:

"In the construction of land grant acts in aid of railroads, there is a well-established distinction observed between 'granted lands' and 'indemnity lands.' The former are those falling within the limits specially designated, and the title to which attaches when the lands are located by an approved and accepted survey of the line of the road filed in the Land Department as of the date of the act of Congress. The latter are those lands selected in lieu of parcels lost by previous disposition or reservation for other purposes, and the title to which accrues only from the time of their selection."

See, also, United States v. Missouri, Kansas & Texas Railroad Co., 141 U. S. 358, 12 Sup. Ct. 13, 35 L. Ed. 766; Southern Pacific v. Bell, 183 U. S. 675, 22 Sup. Ct. 232, 46 L. Ed. 383.

Our conclusion upon this point is that the lands involved in the appeal of the United States were legally selected by the defendant railroad company, because at the date of their selection they were unappropriated public lands, and that as to such lands the bill was properly dismissed.

2. The question presented by the appeal of the Southern Pacific Railroad Company is as to the effect of a final decree rendered on July 19, 1894, in an action brought by the United States against the Southern Pacific Railroad Company to quiet title to the lands involved in this appeal, and in which action it was adjudged that the United States was the owner in fee simple of said lands, and the decree further provided:

"That the defendants are, and each of them is, forever enjoined and restrained from * * * claiming or asserting any right, title, or interest in or to the said lands, or any part thereof."

The contention of the Southern Pacific Railroad Company is that this decree does not bar its present assertion of title to the lands affected thereby, because the indemnity selections under which it now claims were not made until long subsequent to the entry of the decree referred to; and it is urged that by such selection the defendant has acquired a new title, one which it did not possess at the time of the rendition of the former decree, and therefore not concluded by it. There is, of course, no denial of the general rule that a judgment in ejectment or other action affecting title to real estate does not deprive the party found without title of the right to acquire a new and distinct title, and, when so acquired, to assert the same without prejudice from the former suit; but that principle has no application here, because the title under which the defendant now claims has its origin in a statute granting it the right under certain conditions to acquire the title now asserted, and this statute was in force at the date of the commencement of the action in which

the former decree was entered. The railroad company's contingent right to select and acquire title to the lands in controversy, in that action as in this, was an existing right when the former action was commenced, which, whether asserted or not at that time, is concluded by the decree. The object of the suit in which the prior judgment was entered was to quiet the title of the United States against all claims of the defendant Southern Pacific Railroad Company, and the effect of the decree was to quiet the title of the United States against all claims of the defendant railroad company arising under any statute of the United States then in force, and the Supreme Court in the case of Southern Pacific R. Co. v. United States, 183 U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307, referring to the cases of United States v. Southern Pacific Railroad Co., 146 U. S. 570, 13ʹ Sup. Ct. 152, 36 L. Ed. 1091, United States v. Colton Marble & Lime Co., 146 U. S. 615, 13 Sup. Ct. 163, 36 L. Ed. 1104, and Southern Pacific Railroad Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, said:

"Of course, the decrees that were rendered in those cases are conclusive of the title to the property involved in them, no matter what claims or rights either party may have had and failed to produce; but as to property which was not involved in those suits, they are conclusive only as to the matters which were actually litigated and determined."

It may be stated, as a well-settled principle of law, that, when the title of a defendant is challenged by an action to quiet title, he is required to plead whatever right, title, or interest he has or claims to have in the land, and a final judgment in favor of the plaintiff is res judicata as to every right which the defendant then had, whether asserted or not. The object of this rule is to put an end to litigation. Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, 38 L. Ed. 463; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; United States v. California & Oregon Land Co., 192 U. S. 355, 24 Sup. Ct. 266, 48 L. Ed. 476.

It follows from what we have said that in our opinion the decree of the Circuit Court is right, and it is therefore affirmed.